May it please the Court, Counsel. Good morning, Your Honors. Peter Bobber on behalf of Appellant Claimant Anna Szczebak. There is no dispute that this is a manifest weight case and unlike the majority of manifest weight cases that appear before this Court, I would attest that this one does meet that standard if one looks at the facts that are in the record and those facts warrant only one finding, that this petitioner in fact is an odd lot total permanent disability case. The pertinent facts I'd like to address or direct the Court's attention to are as follows. There's no dispute Ms. Szczebak had three surgeries to her hands and thumbs, which rendered her with permanent restrictions and limitations, including a 20-pound lifting restriction and no forceful use of her thumbs. After each of her surgeries, the employer did provide her light-duty work at a variety of different jobs. In July of 2005, the employer provided her a job in the mailroom. There's no dispute and there's no allegation that uh, Claimant performed this job for the remainder of July of 2005, all of August, September, and into October of 2005, without any complaint or any issue. On October 12, 2005, employer fired her. That's the evidence in the record. After that, in addition, she testified she felt she was terminated improperly. The key fact in this case is that after October 12, 2005, this employer never offered her any work. There is no evidence that any work was available at this employer after that date, which this Claimant could perform. Counsel, what do you make of this evidence in the record that plaintiff had routinely in the past exercised her right to bump other employees with less seniority? The Claimant testified she was familiar with this process and could have done it, but she didn't do that. Why? Well, Your Honor, that's while she was employed by Respondent, employed by this employer. After October 12, 2005, she was fired. There's no evidence in the record she was laid off. That is created by Employer's Counsel on cross-examination. They start using the word laid off. This petitioner, who was the only witness to testify in this regard, never indicated that she was laid off. She was fired alone. On October 12, 2005, that is the evidence in the record. And so, Your Honor, just like maybe a benefit of your employment, if you were terminated from your job, that benefit's no longer to be available to you. So there's no evidence in the record that the bumping procedure was available to her after October 12, 2005, after she was fired. Additionally, Your Honor, even if it was available to her, which there is no evidence that there is, and I'm not conceding that point, I want to make that very clear, even if there was such evidence that she still had some union rights to, based on her seniority, to reapply or get jobs there, that there was any job available subsequent to that October 12, 2005 firing that she could perform that were within her restrictions or limitations. I agree that for three and a half years, while she was undergoing her treatment, up until October 12, 2005, a respondent did provide her light-duty work that was within her restrictions that she was able to perform. There were a couple jobs here and there she had some medical issues with and she had difficulties with, but that last job, which she performed for almost three months, there's no evidence that she ever had any issue with that. She never talked to her doctor about that. She never complained about that. There's no evidence of that. When did she file for union pension benefits and Social Security benefits? When did she do that? Your Honor, she applied for her pension in December of 2005, over two months after she was fired. Prior to that, she applied for unemployment benefits. And as to the Social Security, Your Honor, there's no evidence in the record as to when she applied for Social Security benefits. And so I'm not going to ask the Court at this point to take judicial notice of when one is eligible to apply for those benefits, because that evidence is not on the record. However, before applying for the pension benefits, she did apply for unemployment benefits. And this goes exactly contrary to the Commission's finding that I think the quote from the Commission's order is that on October 12, 2005, this claimant opted out of the labor market. She didn't. Opting out of the labor market sounds voluntary. She was fired that day. That's the evidence in the record. When you say she was fired, didn't Petitioner, before she was quote-unquote fired, specifically claim a physical inability to return to the work duties that were provided to her? Isn't that what happened? Well, Your Honor, yes. Earlier in the summer of 2005, yes, she had some difficulty with the forklift driver job that she was being trained for. She didn't even make it through training. So that was one job they made available to her. She claimed she couldn't perform. But after that, Your Honor, subsequent to that, in July of 2005, for the last two and a half months she worked there, she performed a job without any complaint, without any allegation that she couldn't perform it. It was employers doing on October 12, 2005, that they no longer, for whatever reason, made that job available to her, and they fired her. And then she applied for and received unemployment benefits, which is rather inconsistent with opting out of the labor market. Well, it's inconsistent with being terminated for cause, too, isn't it? Well, terminated for cause... But this was not a reduction in workforce? There's no evidence that it was. There's no evidence in the record that it was a reduction in workforce? No, Your Honor. There is evidence in the record, based on this claimant's cross-examination testimony, that other workers, at some point, prior to April of 2006, were laid off as part of an economic layoff. And then in April or May of 2006, other workers were called back. And I think that's the direct quote from petitioner's testimony, was that in April or May of 2006, she was aware that some other laid-off workers were called back, which obviously implies that employer called them back to work, now apparently having more work available. But once again, I need to emphasize to this Court that at no point subsequent to the October 12, 2005 termination, I'll call it termination rather than firing if firing offends the Court for some reason, but at no point after that date is there any evidence that respondent had available any job that this petitioner could perform. Additionally, even if there was a job available, there's no evidence that any such job was ever offered to her. That's the key. Once they terminated her, it's my position that they now owe her vocational rehabilitation benefits pursuant to Section 8A. They chose not to provide those. They provided no explanation as to why they weren't providing those. I agree, this employer may have bent over backwards for three and a half years and provided this lady light-duty work, but they chose not to effective that date. My position under the Act is that they now have an obligation to provide vocational rehabilitation benefits which were demanded and requested. They did not do so. Subsequent to that, she conducted a self-directed job search, which was referred to by the vocational rehabilitation expert as commendable, and even the commission did not take issue with the quality of her job search. Additionally, we had the vocational counselor himself, which is the only one involved in the case, offering the opinion that no stable labor market exists for this petitioner. So, unlike this Court's decision in Esposito where you overturned a commission denial of a la total permanent disability based upon the manifest weight of the evidence, I would attest here the facts are even stronger for such a reversal because this petitioner satisfied her burden by not only conducting a diligent job search, but also we have vocational expert testimony that there is no stable labor market for this petitioner given her age, skills, lack of transferable skills, education, and her physical limitations. Now, I would attest, Your Honor, too, that as to the receipt of pension benefits, there is no evidence in the record that receipt of those benefits would somehow preclude her from working elsewhere or working actually for this employer. The commission relied on facts that are simply not on the record in coming to the conclusion that this petitioner somehow voluntarily opted out of the labor market. The other issues I raised in my brief essentially fall hand in hand with the commission's finding based upon the October 12, 2005 termination, which they phrased as opting out of the labor market. It's clear that this petitioner was entitled to vocational rehabilitation benefits, including the payment of maintenance benefits while she conducted her diligent self-directed job search. And also, given that employer provided no written explanation for the denial of benefits as is required by the rules of the Workers' Compensation Commission, I believe penalties were warranted here. Did she ask the employer for work after, what, June of 06? No, Your Honor. There's nothing in the record that she did. And in fact, I'll back that up. She never asked the employer for work any time after she was fired on October 12, 2005. And I would argue that it is illogical for one, after being fired from a job, to return to that job and ask for work. Does she have any burden here at all to prove that she can or cannot work? Oh, absolutely, Your Honor. And I think she's met that burden. We have the initial burden to show that she sustained a work injury, which prevents her from doing her given job, which I believe we've done. There's no medical dispute in this case. And she worked for three and a half years of late-duty work. And then, subsequent to her termination, she conducted a diligent job search. And we could prove in the alternative that there's vocational support, that there's no stable labor market for her. Did she ever ask to go back to her former employer? Did she ever ask to go back to her former employer? After she was fired? No, Your Honor. No, she didn't. Okay. But my position is that there's no requirement that she do that. That's not a reasonable action for one to take. And lastly, there's no evidence in the record that Respondent had such a job available, an accommodating, appropriate job available for her, following her October 12, 2005 firing. Thank you. Thank you. Counsel, please. Please, the Court. Mr. Barber, Myles K. Lemaire of ITT Bellinghasset. Keep your voice up, please. Excuse me, sir. Keep your voice up. Yes, sir. I apologize. Counsel has admitted before the Court that this is a manifest weight case. Based upon the facts of the case and the Industrial Commission's analysis, I believe the record clearly supports an affirmance of the Industrial Commission's decision. The petitioner in this cause over a period of years, 2002 to 2005, had three total weeks of lost time at the Respondent's location. There was no testimony of those work activities she engaged in for all those years, had any, was any make work or temporary assignment or something that didn't fit within a stable job market. At the close of her employment with the Respondent, after Dr. Vendor had found that she was at maximum medical improvement in April of 2005, she continued to make some complaints. She was trained for a forklift job due to economic changes at the Respondent's location with the closure of the motor department. The petitioner was trained and attempted that training for one day. The petitioner stated her belief or opinion that she was physically incapable of performing that work activity and went to Dr. Vendor in order to plead that case. Dr. Vendor did not indicate she was physically incapable of performing that work activity and indicated she was only precluded from the persistent forceful use of her thumbs. What happened on October 18, 2000, or excuse me, October 12, 2008? October 12, 2008, she had been moved. There had been general layoffs at the plant. The petitioner testified that she had been laid off and other people were laid off at or about the same time. She had previously bumped other employees from the packaging department and then was again, due to economic conditions, was bumped by another employee with more seniority. She was separated from the Respondent's employee and immediately applied for unemployment insurance benefits. On December 8, 2005, she applied for retirement benefits with I.T.D. Bellinghasset and by the time she talked to the retained expert who met with her on one occasion with vocational rehabilitation benefits, she had already applied for Social Security Disability benefits, withdrawing herself from the workforce. She was cross-examined about her knowledge of how to file grievance procedures and how to bump other employees out of the union and she opted not to pursue that. Well, can she do that after she's laid off? She indicated that the union had contacted her on one occasion and she had opted not to call them back and she believed it was the union's obligation to contact her, not her to contact the union. So it would not be true that she could not have gone back to the Respondent? She indicated that, by her own testimony, indicated her taking that retirement would not have precluded her return to the Respondent. She was aware of that. She would have some duty to mitigate her damages and some duty to take some steps to return to work. The first place she could have done that was when she was trained for the additional job that Dr. Vendor did not preclude that she could do in July of 2005 that led to her move to the mailroom department. They admit that she worked consistently for three months in the mailroom department without any indication that that was a make-work job or not some job that fit within the regular economy. This petitioner has some element of restrictions. The Industrial Commission reviewed those restrictions and actually modified the decision of the arbitrator increasing the award of benefits. There is nothing in here that says the Industrial Commission did not have a valid basis to review and evaluate the evidence. They specifically reviewed the report of the vocational counselor and questioned the petitioner's claim that she had language difficulties when Mr. Patsevas had indicated that she was bilingual in his report and clearly indicated that they believed that she had withdrawn herself from the workforce through the application for retirement and the Social Security Disability Benefits. I'm going to make opposing counsel's argument that she conducted a diligent job search. That's what he's alluding to. A diligent job search would come into play when someone is actually physically precluded from a return to work. Dr. Vendor didn't say she couldn't do the formal training job. That was her own treating physician that said that. That was her own treating physician. She was sent there on a referral with the company, but she chose to treat with the man for over three different surgeries. She treated with him for a period of years. Dr. Vendor did not. He ordered FCEs. He ordered testing. He actually sat down in the records, sat down with the woman and her daughter, sat down with the woman and the representative from the company who had identified the job and evaluated the job in order to view the video of the job to see if she could do it. And her treating physician felt she was capable of returning to work. Is that the bottom line? Correct. And they placed her at maximum medical improvement and found she was capable of work, and he encouraged her to perform work activities except those that required forceful pressing of the thumbs. I think there's ample evidence in the record that this petitioner, the Industrial Commission's decision is supported by the record and supported by reasonable inferences regarding her desire to return to work, and I don't think there's any basis for reversal in the Industrial Commission's decision  Thank you. Thank you. Rebuttal. Very briefly, Your Honors. Your Honor, to address your point, the significant fact here is, and I'm agreeing that this petitioner performed several different jobs for a respondent that she was physically capable of performing under her restrictions and limitations. But there is no evidence in this record that subsequent to her firing on October 12, 2005, that any of those jobs are available to this petitioner. Once petitioner has met her burden, proving the odd-lot case, which I believe we have, because after her firing on October 12, 2005, we have permanent restrictions that preclude her from a regular job, and we have evidence of a reasonably diligent job search, and we have vocational evidence supporting that there's no stable labor market for this petitioner, and there's no vocational evidence to the contrary, the burden shifts to respondent, to the employer here, to prove that there is a labor market available. They could have presented evidence from a vocational counselor. They didn't. They could have brought a company representative in saying, yeah, we called that back to everybody in 2006 that we laid off for economic reasons in 2005, and that's why we laid off this petitioner. And had she not retired, she would have had these options available to her. She could have worked in the mailroom for the next 20 years had she so chosen and exercised her union rights due to that. There's no such evidence in the record. And because of that, I think the commission's decision calls for reversal. Thank you. Thank you, counsel. The court will take the matter under advisory for disposition.